UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICHOLAS B. ARNDT,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN, Commissioner of Social Security,<br><br>Defendant. | Case No. C14-821 JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Nicholas B. Arndt seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends the ALJ erred by (1) finding methamphetamine use to be a factor material to the determination of disability; and (2) failing to appropriately weigh the opinion of examining psychologist Robert Parker, Ph.D. Dkt. 12. As discussed below, the Court recommends the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

**BACKGROUND**

Mr. Arndt is currently 35 years old, has a GED, and has worked as a customer-service representative. Tr. 79–92. On April 7, 2011, he applied for benefits, alleging disability as of June 1, 2008. *Id*. His applications were denied initially and on reconsideration. Tr. 81–132.

REPORT AND RECOMMENDATION - 1

The ALJ conducted a hearing on November 15, 2012, finding Mr. Arndt not disabled because methamphetamine use was a contributing factor material to the determination of disability. Tr. 19–31, 36–78. As the Appeals Council denied Mr. Arndt's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–3.

## THE ALJ'S DECISION

Where relevant, the ALJ conducts a drug abuse or alcoholism ("DAA") analysis twice: first to determine whether, including the use of drugs or alcohol, the claimant is disabled; and second to determine whether, absent the use of drugs or alcohol, a claimant's disabling limitations remain. 20 C.F.R. § 404.1535; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). Here, following the five-step sequential evaluation process,[1] the ALJ determined at **step one** that Mr. Arndt had not engaged in substantial gainful activity since June 1, 2008; and at **step two** that Mr. Arndt had the following severe impairments: **affective disorder (major depressive disorder), anxiety disorder, and methamphetamine dependence**. Tr. 22.

On the **first pass** through a DAA analysis (**including methamphetamine use**), the ALJ made the following determinations:

**Step three:** Mr. Arndt's severe impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** Including methamphetamine use, Mr. Arndt had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he has sufficient concentration to understand, remember and carry out simple routine tasks for up to 4 hours per day; he can work in coordination with a small group of coworkers (up to 8) and can work in proximity to an unlimited number of coworkers; he can have superficial and occasional face to face contact with the general public; phone contact with the general public is not restricted; he can interact with supervisors occasionally; he can work in coordination with a small group of coworkers (up to 8) and in this manner is unlikely to be a distraction to his coworkers; he can respond to workplace changes consistent with simple routine tasks and complex tasks

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

with an SVP up to 7; he can set workplace goals consistent with simple routine tasks and complex tasks with an SVP up to 7.

**Step four:** Including methamphetamine use, Mr. Arndt could not do his past work.

**Step five:** Including methamphetamine use, there are no jobs that exist in significant numbers in the national economy that Mr. Arndt can perform. If his substance dependency is included, Mr. Arndt is disabled.

Tr. 22–25.

On the **second pass** through a DAA analysis (**absent methamphetamine use**), the ALJ made the following determinations:

**Step two:** *Absent methamphetamine use*, Mr. Arndt's remaining impairments (**affective disorder (major depressive disorder) and anxiety disorder**) would still be severe.[3]

**Step three:** *Absent methamphetamine use*, Mr. Arndt's severe impairments did not meet or equal the requirements of a listed impairment.

**Residual Functional Capacity ("RFC"):** *Absent methamphetamine use*, Mr. Arndt had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he has sufficient concentration to understand, remember and carry out simple routine tasks and complex tasks but complex tasks are limited to SVPs of 7; he can concentrate in 2-hour increments with usual and customary breaks throughout an 8-hour day; he can work in coordination with a small group of coworkers (up to 8) and can work in proximity to an unlimited number of coworkers; he can have superficial and occasional face to face contact with the general public; phone contact is not restricted; he can interact with supervisors occasionally; by limiting coordination or work to a small group of coworkers (up to 8) he is able to not be a distraction to others; he can respond to workplace changes consistent with simple routine tasks and complex tasks with an SVPs up to 7; he can set workplace goals consistent with simple routine tasks and complex tasks with SVPs up to 7.

**Step four:** *Absent methamphetamine use*, Mr. Arndt could not do his past work.

**Step five:** *Absent methamphetamine use*, there are jobs that exist in significant numbers in the national economy that Mr. Arndt can perform. Because methamphetamine dependency is a contributing factor material to the determination of disability, he is not

---

[3] Mr. Arndt argues that the ALJ subtracted the methamphetamine dependence but failed to identify which of the other impairments remain "severe." Dkt. 12, at 4. That argument is specious. It is unreasonable to conclude other than that the remaining "severe" impairments included all the impairments found to be severe except for methamphetamine dependency. *See* Tr. 25.

REPORT AND RECOMMENDATION - 3

1     disabled.

2 Tr. 25–31.

### DISCUSSION

Mr. Arndt argues that the ALJ legally erred and failed to support her decision with substantial evidence because the ALJ (1) found methamphetamine use to be a contributing factor material to the determination of disability; and (2) failed to give proper weight to the opinion of examining psychologist Dr. Parker. Dkt. 12. The Court disagrees because the ALJ neither committed harmful legal error nor failed to support her decision with substantial evidence. *See* 42 U.S.C. § 405(g); *Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012).

    **1.**     **DAA as Contributing Factor Material to Determination of Disability**

Mr. Arndt argues that the ALJ harmfully erred because her determination that methamphetamine dependency was a contributing factor material to the determination of disability was not adequately supported as a matter of fact and law. Mr. Arndt's argument is unpersuasive.

An otherwise disabled person such as Mr. Arndt is not entitled to disability benefits if drug addiction or alcoholism is a contributing factor material to the Commissioner's decision that he is disabled. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(b)(2)(i); *see Parra v. Astrue*, 481 F.3d 742, 747–48 (9th Cir. 2007). The ALJ thus separates out the impact of DAA to determine if plaintiff would still be found disabled if he stopped using drugs or alcohol. *Bustamante*, 262 F.3d at 955. As plaintiff, Mr. Arndt bears the burden of proving that DAA is not a contributing factor material to his disability. *Parra*, 481 F.3d at 747–48.

Here the ALJ employed the sequential disability evaluation process and, upon finding Mr. Arndt disabled at step 5, performed the sequential analysis again, this time separating out the

REPORT AND RECOMMENDATION - 4

impact of his methamphetamine dependency and finding that Mr. Arndt would not be disabled at step five if he ceased using drugs. Tr. 21–31. The ALJ adequately supported her determination by making an adverse credibility finding against Mr. Arndt that discounted the severity of his reported mental-health symptoms and by citing medical and other reports that Mr. Arndt functioned adequately during periods of sobriety.

      First, the ALJ discounted Mr. Arndt's credibility about the severity of his mental-health symptoms based on his multiple inconsistent reports regarding his drug use. Tr. 28. For example, the ALJ noted that in June 2010, Mr. Arndt admitted dependence on methamphetamine and reported that he had been using heavily for the past ten years. Tr. 28 (citing Tr. 303). As the ALJ noted, those admissions are inconsistent with his June 2011 self-report to examining psychologist Faulder Colby, Ph.D., that his history of drug use was limited to using marijuana as a teenager. Tr. 28 (citing Tr. 364). And Mr. Arndt's credibility was further undermined by his later admission that he had been smoking methamphetamine from March 2011 to September 2011, i.e., at the same time he denied current use when being seen by Dr. Colby. Tr. 28 (citing Tr. 415). Even within his hearing testimony, Mr. Arndt first stated that the last time he used methamphetamine was April 2011, and later referred to a weekend-long relapse in July 2012. Tr. 28; *compare* Tr. 56 *with* Tr. 58; *see also* Tr. 415 (noting a relapse between March 2011 and September 2011). As further example, the ALJ noted that although Mr. Arndt testified that he stopped working and going to school because of increased anxiety, Tr. 62, 66–68, in June 2010 he stated that he had dropped out of community college due to drug use, Tr. 301, in April 2011 he claimed that he dropped out due to financial reasons, Tr. 386, and in November 2010 he reported that he was unable to sustain employment primarily due to substance abuse, Tr. 346. *See* Tr. 28. Moreover, Mr. Arndt has not challenged the ALJ's adverse credibility finding that

REPORT AND RECOMMENDATION - 5

1  Mr. Arndt understated or misrepresented the extent of his drug use and the impact of his
2  methamphetamine dependence on his mental health symptoms.  He therefore cannot plausibly
3  carry his burden of proving that methamphetamine dependency was not a contributing factor
4  material to disability by suggesting that only his account of the severity of his mental-health
5  symptoms is supported by the evidence.

6  Second, the ALJ cited medical and other evidence that Mr. Arndt functioned adequately
7  during periods of sobriety.  For example, the ALJ noted that in May 2010 Mr. Arndt's mental
8  status examination results while incarcerated showed him to be completely oriented and with no
9  indication of particular mental-health limitations.  Tr. 28 (citing Tr. 307); *see* Tr. 307 ("Does not
10 present with any significant mental illness at this time.  Full MHA is needed.  No mention of
11 anxiety, only lack of medication.  Is getting antidepressants.  No sign of anxiety in this
12 interview.").  Similarly in June 2010, also while Mr. Arndt was incarcerated, his mental status
13 examination suggested mild judgment impairment and no other out-of-the-ordinary observations
14 regarding affect, mood, orientation, thought, memory, attention, hallucinations, or delusions.  Tr.
15 28 (citing Tr. 303).  Mr. Arndt also reported that medications, avoiding bus trips, and breathing
16 exercises helped to lessen his panic attacks and in April 2011 he reported that his anxiety was
17 "pretty under control."  Tr. 385; *see* Tr. 391.  As further example, the ALJ noted that Mr. Arndt
18 engaged in activities that were inconsistent with severe limitations based solely on anxiety and
19 depression, such as maintaining B average at community college, being excited about going back
20 to school and planning for it, going out to the movies with friends, walking downtown, going out
21 5 to 7 times per week, moving to Portland to take care of an aunt who had a stroke, cooking,
22 shopping, and using Facebook.  Tr. 25–26, 28–29 (citing, e.g., Tr. 242–49, 329, 439).  Contrary
23 to Mr. Arndt's assertions, the ALJ makes clear throughout the decision that she considered the

REPORT AND RECOMMENDATION - 6

severity of Mr. Arndt's mental impairments and concluded that once substance use was removed from the equation, the remaining depression and anxiety resulted in significantly fewer functional limitations.  Tr. 26–30.

Mr. Arndt argues that the ALJ's materiality determination was not sufficiently detailed to satisfy Social Security Ruling ("SSR") 13-2p (effective Mar. 22, 2013).[4]  Dkt. 12, at 3–5.  The Court disagrees.  SSR 13-2p provides that ALJs "must provide their rationales in their determinations and decisions."  The ALJ provided cited substantial evidence to support her determination that Mr. Arndt's methamphetamine dependency was a contributing factor material to his disability, including Mr. Arndt's statements that methamphetamine dependence led him to leave work and community college, and medical and other reports that demonstrated Mr. Arndt could function at a higher level in the absence of drug use.[5]

### 2. Weight Given to Opinion of Examining Psychologist Dr. Parker

Mr. Arndt argues that the ALJ gave too little weight to the opinions of examining psychologist Dr. Parker.  Mr. Arndt's argument is unpersuasive.

In February 2011, Dr. Parker diagnosed major depressive disorder, social phobia, amphetamine abuse in remission, and adult antisocial behavior.  Tr. 310.  Dr. Parker opined that Mr. Arndt's prognosis for employment was poor,  and assessed moderate to severe functional limitations related to cognitive and social factors.  Tr. 311–12.  Dr. Parker noted no indication of current or recent substance use, opined that none of the mental health symptoms were affected by

---

[4] The Court notes that the ALJ issued her decision in December 2012, i.e., before SSR 13-2p became effective in March 2013.

[5] Mr. Arndt argues that the ALJ's discussion of functional limitations "supports a finding that DAA is not material as often as it supports the ALJ's finding that it was material."  Dkt. 12, at 5.  An ALJ's conclusions will be upheld if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005).

REPORT AND RECOMMENDATION - 7

substance abuse, stated that drug treatment would not be likely to improve Mr. Arndt's ability to work, and did not recommend a chemical dependency assessment. Tr. 311. Dr. Parker also reported that Mr. Arndt stated that he used methamphetamine daily from 2001 to 2007 but had had been clean since 2007. Tr. 314. In March 2012, Dr. Parker diagnosed bipolar disorder, chronic PTSD, and social anxiety. Tr. 414. Puzzlingly, Dr. Parker did *not* diagnose methamphetamine dependency even though he noted that he had previously diagnosed drug dependency in remission, that Mr. Arndt had used from 2001 to 2007 and relapsed from March 2011 to September 2011, and was currently receiving substance abuse treatment at Genesis House. Tr. 415. Dr. Parker opined that Mr. Arndt's prognosis for engaging in gainful employment was very poor, and recommended continuing mental-health treatment *without* recommending continued substance abuse treatment. Tr. 416.

      The ALJ discounted Dr. Parker's medical opinion as follows:

> It appears that Dr. Parker relied on the claimant's self-report, which the record shows is unreliable. The claimant did not disclose his ongoing drug use. The claimant testified that his last use of methamphetamine daily was in April 2011, which was after Dr. Parker's February 2011 assessment. Although Dr. Parker references[] a relapse on drugs from March 2011 to September 2011 in his later assessment, the claimant's level of functioning is inconsistent with disabling mental symptoms. Dr. Parker noted that the claimant was attending group sessions, performing chores, and tending to his personal care needs independently. The undersigned notes that the claimant had another relapse in July of 2012.

Tr. 29. The ALJ thus cited two reasons for giving Dr. Parker's medical opinion little weight: (1) Dr. Parker relied on Mr. Arndt's unreliable self-report; and (2) Mr. Arndt's level of functioning in the absence of drug use is inconsistent with disabling mental symptoms. When, as here, a medical opinion is contradicted by another physician, the ALJ may not reject an examining doctor's opinion without "specific and legitimate reasons" that are supported by

REPORT AND RECOMMENDATION - 8

substantial evidence in the record.[6] *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ provided specific and legitimate reasons supported by substantial evidence to reject Dr. Parker's medical opinions. As noted earlier in the materiality discussion, Mr. Arndt does not challenge the ALJ's many reasons for doubting his self-reporting regarding methamphetamine use, and the medical and other records plausibly demonstrate Mr. Arndt's higher functionality when sober.

First, although the Commissioner concedes that the ALJ should not have implied that Mr. Arndt's was using methamphetamines in February 2011 when Mr. Arndt admitted only to a relapse beginning March 2011, Dkt. 13, at 10, the error is harmless because it does not alter the ALJ's conclusion that Dr. Parker relied too heavily on Mr. Arndt's unreliable testimony. For example, although Mr. Arndt told Dr. Parker that he used methamphetamines from 2001 to 2007, and also from March 2011 to September 2011, in June 2010 he told mental health providers that he had been abusing methamphetamines "heavily" for the past ten years and that he been actively abusing substances while committing crimes in 2009. Tr. 301, 303. Dr. Parker took Mr. Arndt's self-reports of methamphetamine use at face value, evinced no knowledge that Mr. Arndt had ever been anything other than truthful in reporting about his drug use,[7] declined to discuss why long-term and recurring substance dependency had no impact on Mr. Arndt's mental health symptoms, and in March 2012 declined to diagnose substance dependency even though

---

[6] In this case, the ALJ gave significant weight to the contradictory opinion of non-examining psychologist James Bailey, Ph.D., because it was consistent with the record of fewer functional limitations when accounting for Mr. Arndt's substance use. Tr. 30; *see* Tr. 121–32.

[7] Dr. Parker's wholesale reliance on Mr. Arndt's oral account of his history of drug use stands in stark contrast to the opinion of examining psychologist Dr. Colby, who noted, "An additional point in favor of his not been fully forthright was the discrepancy between his denial of any substance abuse other than marijuana, to me, and his medical records indicating a diagnosis of Amphetamine Dependence." Tr. 369.

REPORT AND RECOMMENDATION - 9

Mr. Arndt was concurrently enrolled in a substance abuse treatment program.[8] "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Given Dr. Parker's failure to support his opinion regarding the negligible impact of substance dependency on Mr. Arndt's mental-health symptoms, the ALJ reasonably concluded that Dr. Parker's opinion was based in part on Mr. Arndt's unreliable self-reporting. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (when evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ).

Second, although the ALJ discounted Dr. Parker's opinion by referring to activities cited by Dr. Parker that suggested a higher level of functioning—attending group sessions, doing chores, attending to personal care—the record also amply supports the ALJ's broader proposition that Mr. Arndt is capable of doing more than he purports. For example, in addition to the evidence mentioned in the materiality discussion, examining psychologist Dr. Colby noted that "[d]ata reliability assessment found mixed evidence that may or may not indicate adequate effort, especially during the cognitive testing." Tr. 369.

The Court finds that the ALJ did not harmfully err by discounting Dr. Parker's medical opinions because she cited specific and legitimate reasons for doing so that were supported by substantial evidence.

---

[8] Mr. Arndt does not suggest that the ALJ erred by declining to assess the severity of (1) Dr. Parker's new diagnosis of PTSD, or (2) Dr. Parker's recharacterization of major depressive disorder as bipolar disorder despite "[n]o history of manic episodes" because "today this client reports a history of mood swings with manic episodes since his early 20's." *See* Tr. 414–15.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **March 23, 2015.** If no objections are filed, the matter will be ready for the Court's consideration on **March 27, 2015**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 6th day of March, 2015.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge